**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SHREYA KAPOOR, YASH PAL GARG, and REVA GARG,<br><br>Plaintiffs,<br><br>v.<br><br>ANTONY BLINKEN,<br><br>Defendant. | Case No. 21-cv-01961-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 25] |

Plaintiffs seek to compel Defendant Antony Blinken, the United States Secretary of State, to adjudicate the immigrant visa applications of Plaintiffs Yash Pal Garg ("Yash") and Reva Garg ("Reva"), who are nationals of India.[1] The applications were filed by Yash and Reva's daughter, Plaintiff Shreya Kapoor, who is a United States citizen. The applications had been pending for less than a year when Plaintiffs filed the present suit, claiming that Defendant has unreasonably delayed in adjudicating the applications. Plaintiffs seek relief under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*

Defendant moves for summary judgment, asserting that the delay in adjudicating the applications is not unreasonable, particularly in light of the COVID-19 pandemic. Defendant argues that even before the pandemic, the Ninth Circuit routinely found that lengthier delays are not unreasonable.

Having considered the parties' written submissions and the oral argument presented at hearings on October 28, 2021 and November 18, 2021, the Court GRANTS Defendant's motion for summary judgment.

---

[1] The Court uses these Plaintiffs' first names for ease of reference and means no disrespect by the informality.

**I.  BACKGROUND[2]**

*Overview of Immigrant Visa Processing*

A foreign citizen who wishes to live permanently in the United States must obtain an immigrant visa. *See* Jeu Decl. Exh. A., ECF 25-4. Immigrant visa applications are processed by the National Visa Center ("NVC"), which is part of the United States Department of State ("State Department"). *See* Austin Decl. ¶¶ 1-4, 25-2. The NVC ensures that all fees have been paid and that each application is "documentarily complete," meaning that all required documents have been submitted. *See id*. Once an application is documentarily complete, the NVC schedules an appointment for the beneficiary of the application to appear for an interview at a United States embassy or consulate overseas. *See id*. ¶ 4. Each post regularly reports to the NVC how many total visa interview appointments it can accommodate. *See id*. ¶ 3. Based on that information, the NVC schedules visa interviews at each post. *See id*. Where the demand for interviews exceeds the post's capacity, the order of interviews is determined by the date each application became documentarily complete. *See id*. ¶ 4. Once an interview is scheduled, the NVC sends an appointment letter to the beneficiary and sends the case file to the embassy or consulate. *See id*.

*Backlog of Immigrant Visa Applicants Waiting for Interviews*

The NVC's ability to process visa applications and schedule interviews has been severely impacted by the COVID-19 pandemic. The State Department suspended all routine visa services, including visa interviews, on March 20, 2020. *See* Austin Decl. ¶ 7. The State Department began a phased resumption of routine visa services in July 2020. *See id*. However, embassies and consulates have not been able to process as many immigrant visa applicants during the COVID-19 pandemic as were processed prior to the pandemic. *See id*. ¶ 8. Many posts' staffing levels have been affected by employees' illnesses, absence to care for family members, or mandatory quarantine after possible exposure to the virus. *See* Marwaha Decl. ¶ 4, ECF 25-1. The number of people who can safely be at a post on any given day has been drastically reduced due to COVID-19 safety measures. *See id*.

---

[2] The facts set forth in the Background section are undisputed.

Moreover, former President Donald Trump issued Presidential Proclamation 10014 ("Proclamation 10014") on April 22, 2020, suspending "entry into the United States of aliens as immigrants" for several categories of visa applicants. Proc. 10014, 85 FR 23441. Proclamation 10014 was revoked on February 24, 2021, *see* Proc. 10149, 86 FR 11847, but while it was in effect it restricted issuance of visas to several categories of immigrant applicants, including "IR-5" visas to parents of United States citizens of at least twenty-one years of age, *see* Grewe Decl. ¶ 6, ECF 42-1.

These events contributed to a significant backlog of applicants waiting for immigrant visa appointments. In January 2020, there were approximately 75,000 documentarily qualified applicants worldwide who were waiting to be scheduled for in-person interviews. *See* Marwaha Decl. ¶ 4. By May 31, 2021, that number had climbed to 536,541. *See id*.

*State Department's Guidance for Prioritizing Immigrant Visa Applications*

On November 12, 2020, the State Department issued guidance that prioritizes four categories of immigrant visa applications. *See* Jeu Decl. Exh. F, ECF 25-4. Highest priority is given to immediate relative adoption visas, age-out cases, and Special Immigrant Visas for Afghan and Iraqi nationals working with the U.S. government (Tier One). *See id*. Immediate relative visa applicants and K-1 fiancées are in Tier Two. *See id*. Family preference immigrant visa applicants are in Tier Three. *See id*. All other immigrant visas, including employment preference and diversity visas, are in Tier Four. *See id*. The State Department's guidance directs embassies and consulates to accommodate as many Tier Two cases as possible. *See id*. However, the guidance also directs posts to schedule and adjudicate some cases in Tiers Three and Four each month. *See id*.

*Plaintiffs' Immigrant Visa Applications*

Reva's application was filed on May 13, 2020 and was documentarily complete on July 21, 2020. *See* Kapoor Decl. ¶ 6, ECF 27-1; Austin Decl. ¶ 13. Yash's application was filed on June 8, 2020 and was documentarily complete on August 3, 2020. *See* Kapoor Decl. ¶ 7; Austin Decl. ¶ 13. As immediate relatives of a U.S. citizen, Yash and Reva's applications are under Tier 2 of the State Department's prioritization schedule. *See* Austin Decl. ¶ 13. Because they are parents of a

3

1  U.S. citizen who is at least 21 years old, Yash and Reva's visa applications are "IR-5"
2  applications. *See* Jeu Decl. Exh. B, ECF 25-4.

3        Reva and Yash were assigned Mumbai, India as their processing post, which corresponds
4  to their place of residence. *See* Austin Decl. ¶ 12. Post Mumbai has been hit hard by the
5  COVID-19 pandemic. *See* Marwaha Decl. ¶¶ 7-8. When visa services were suspended worldwide
6  in March 2020, post Mumbai cancelled approximately 600 IR-5 visa interviews. *See* Austin Decl.
7  ¶ 12. Upon the resumption of visa services in July 2020, post Mumbai first re-scheduled those
8  visa interviews that were cancelled in Spring 2020. *See id*.

9        When Proclamation 10014 was revoked in February 2021, post Mumbai also began
10 scheduling new appointments for all the IR-5 applicants whose applications became
11 documentarily complete while Proclamation 10014 was in effect. *See* Austin Decl. ¶ 12.
12 Unfortunately, worsening health conditions in India caused post Mumbai to suspended visa
13 services for a second time in April 2021. *See id*. Post Mumbai canceled several hundred
14 immigrant visa interviews, many of which had been rescheduled from Spring 2020. *See id*. When
15 visa services resumed at post Mumbai, the focus was on rescheduling previously cancelled
16 interviews. *See id.; see also* Marwaha Decl. ¶ 8.

17       Reva and Yash have not yet been scheduled for visa interviews. Reva will be scheduled
18 for an interview ahead of all other IR-5 cases for post Mumbai that were documentarily complete
19 after July 21, 2020, and Yash will be scheduled for an interview ahead of all other IR-5 cases for
20 post Mumbai that were documentarily complete after August 3, 2020. *See* Austin Decl. ¶ 13.

21      *This Action*

22       Plaintiffs filed the present action on March 19, 2021. The complaint contains two claims,
23 the first for a writ of mandamus and the second for declaratory relief under the APA. Plaintiffs
24 seek the same relief under these two alternative theories: "an order compelling the Defendant and
25 those acting under him to perform their duty to complete all steps necessary to adjudicate
26 Plaintiffs' immigrant visa applications, including any pending background checks and the
27 interview, within twenty-one (21) days of the order." Compl. Prayer ¶¶ B-C.
28

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Id.*

"Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Oracle*, 627 F.3d at 387. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

Plaintiffs seek relief under the Mandamus Act and the APA. "In a mandamus action, district courts may 'compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997) (quoting 28 U.S.C. § 1361). In an action under the APA, "a court may compel 'agency action unlawfully withheld or unreasonably delayed.'" *Id.* (quoting 5 U.S.C. § 706(1)). The Ninth Circuit has "recognized that mandamus relief and relief under the APA are 'in essence' the same." *Id.* Thus, where a claim is brought under both the Mandamus Act and the APA, the court may elect to evaluate it under the APA. *See id.*

"[C]ourts generally apply the so-called *TRAC* factors in deciding whether to order relief in

5

1  claims of agency delay brought under the APA." *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507

2  (9th Cir. 1997). The *TRAC* factors were articulated by the D.C. Circuit in *Telecommunications*

3  *Research & Action v. F.C.C.* ("*TRAC*") 750 F.2d 70, 79-80 (D.C. Cir. 1984), and subsequently

4  adopted by the Ninth Circuit. *See Babbitt*, 105 F.3d at 506-07. The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason'[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

11  *Babbitt*, 105 F.3d at 507 n.7 (quotation marks and citation omitted).

12      **A.    First *TRAC* Factor:  Rule of Reason**

13  The Ninth Circuit has held then when considering the *TRAC* factors, "[t]he most important

14  is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re*

15  *A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). The gist of the rule of reason inquiry is

16  "whether there is any rhyme or reason for the Government's delay – in other words, whether the

17  agency's response time . . . is governed by an identifiable rationale." *Poursohi v. Blinken*, No. 21-

18  CV-01960-TSH, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16, 2021) (quotation marks and

19  citation omitted). When the alleged delay involves the processing of an immigrant visa

20  application, district courts have examined both the length of the delay and the reasons for the

21  delay. *See id*. at *4-7 (collecting cases).

22      Reva's visa application was filed on May 13, 2020 and was documentarily complete on

23  July 21, 2020. *See* Kapoor Decl. ¶ 6; Austin Decl. ¶ 13. Yash's visa application was filed on June

24  8, 2020 and was documentarily complete on August 3, 2020. *See* Kapoor Decl. ¶ 7; Austin Decl. ¶

25  13. Plaintiffs filed this suit on March 19, 2021, at which time the applications had been pending

26  for less than one year, Reva had been eligible for an interview for approximately eight months,

27  and Yash had been eligible for an interview for approximately seven months. *See* Compl., ECF 1.

28  As of the date of this order, Reva's application has been pending for approximately twenty months

and she has been eligible for an interview for approximately eighteen months. Yash's application has been pending for approximately nineteen months and he has been eligible for an interview for approximately seventeen months.

In the immigration context, numerous district courts within the Ninth Circuit have found that lengthier delays were not unreasonable. *See, e.g., Zhang v. Cissna*, No. 18-cv-09696-MWF, 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) (Four-year delay in processing asylum application was not unreasonable); *Ou v. Johnson*, No. 15-cv-03936-BLF, 2016 WL 7238850, at *3 (N.D. Cal. Feb. 16, 2016) ("[C]ourts in this district have generally found delays of four years or less not to be unreasonable under the APA."); *Beyene v. Napolitano*, No. 12-CV-1149-WHA, 2012 WL 2911838, at *9 (N.D. Cal. July 13, 2012) (delay of nearly five years in adjudicating plaintiff's application for adjustment of immigration status was not unreasonable); *Islam v. Heinauer*, No. C 10-04222 JSW, 2011 WL 2066661, at *8 (N.D. Cal. May 25, 2011) (point of unreasonableness had "not yet come" after three-year delay for adjustment of status).

Several district courts have specifically addressed delays in processing immigrant visa applications during the COVID-19 pandemic. Those courts uniformly have found that delays as long or longer than those in this case were not unreasonable. *See, e.g., Poursohi*, 2021 WL 5331446, at *6-7 (eighteen-month delay in scheduling interview after visa application was documentarily complete was not unreasonable in light of the impact of the COVID-19 pandemic); *Dastagir v. Blinken*, No. 1:20-CV-02286 (TNM), 2021 WL 2894645, at *1 (D.D.C. July 9, 2021) (considering impact of COVID-19 pandemic in finding no unreasonable delay where visa application had been pending for five years and interview had been completed for twenty-nine months without decision); *Mohammad v. Blinken*, No. 1:20-CV-03696 (TNM), 2021 WL 2866058, at *4 (D.D.C. July 8, 2021) (finding no unreasonable delay where visa application had been pending for two years "given the circumstances" of the COVID-19 pandemic).

Plaintiffs' reliance on *Liang v. Att'y Gen. of U.S.*, No. C-07-2349 CW, 2007 WL 3225441 (N.D. Cal. Oct. 30, 2007), is misplaced. In *Liang*, the plaintiffs alleged that the U.S. Citizenship and Immigration Services ("USCIS") had unreasonably delayed in adjudicating their applications for adjustment of status. *See id*. at *1. The record showed that the delay was caused by the failure

of the Federal Bureau of Investigation ("FBI") to complete a background check on one of the plaintiffs that had been pending for two and a half years. *See id*. The *Liang* court found that delay to be unreasonable based on several cases holding that "a delay of approximately two years or longer due to an uncompleted FBI background check is unreasonable as a matter of law." *See id*. at *6. The present case does not involve USCIS or an FBI background check. Nor are Plaintiffs' claims supported by cases holding that similar delays were unreasonable as a matter of law. To the contrary, the relevant cases set forth above held that similar delays were *not* unreasonable.

Defendant has presented substantial evidence that the COVID-19 pandemic has negatively impacted the NVC's ability to provide visa services both worldwide and at post Mumbai in particular. *See* Austin Decl. ¶ 12; Marwaha Decl. ¶¶ 7-8. The State Department has tried to address the resulting backlog by categorizing immigrant visa applications into four tiers. *See* Jeu Decl. Exh. F. The State Department has prioritized visa applications for immediate relatives, categorizing those applications as Tier Two. *See id.* Unfortunately, the NVC simply has not been able to process immigrant visa applications quickly enough to clear the backlog. *See* Marwaha Decl. ¶ 4. Moreover, Proclamation 10014 caused additional delay in processing IR-5 applications such as those of Reva and Yash. *See* Grewe Decl. ¶ 6. This evidence is more than sufficient to show that there is "rhyme or reason" for the delay in adjudicating Yash and Reva's visa applications.

Plaintiffs suggest that the delay in scheduling their interviews is not fully attributable to the COVID-19 pandemic and that discovery is required because the source of the delay is "largely unknown." Opp. at 15, ECF 27. Federal Rule of Civil Procedure 56(d) provides a mechanism by which the nonmoving party may request additional time to take discovery necessary to oppose a motion for summary judgment. *See* Fed. R. Civ. P. 56(d). The nonmoving party must "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Id*. Plaintiffs have not filed a motion for continuance under Rule 56(d). To the extent that Plaintiffs intended to make such a motion in their opposition brief and during oral argument, Plaintiffs have not made an adequate showing that discovery is warranted. "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence

sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). Plaintiffs offer nothing but speculation that discovery might show some basis for relief grounded in Defendant's processing of immigrant visa applications, as discussed below.

At the first hearing on Defendant's motion, Plaintiffs' counsel argued that the State Department's statistics give rise to an inference that IR-5 applications are treated less favorably than other Tier Two applications at post Mumbai. Tier Two includes all immediate relative visas including IR-1 (spouse of U.S. citizen), IR-2 (child of U.S. citizen), lR-5 (parent of U.S. citizen at least 21 years of age), CR-2 (child of U.S. citizen, conditional status), IW (certain spouses of deceased U.S. citizens and their children), IB (self-petition spouse or child of U.S. citizen), and SB-1 (returning resident). *See* Willy Decl. ¶ 11, ECF 42-2; Jeu Decl. Exh. F, ECF 25-4. Plaintiffs point to statistics showing that for the months January-May 2021, post Mumbai issued far fewer visas to IR-5 applicants than to other Tier Two applicants or, indeed, than to Tier Three and Tier Four applicants. *See* Opp. at 7-8, ECF 27. In January 2021, February 2021, and May 2021, post Mumbai did not issue any IR-5 visas at all. *See id*. The Court asked Defendant to file a supplemental brief addressing those statistics, granted Plaintiffs leave to file a supplemental response brief, and set the matter for a further hearing.

In his supplemental briefing, Defendant provided statistics for post Mumbai for the period June-September 2021. Those statistics show that issuance of IR-5 visas picked up significantly beginning in June 2021, and that in July-September 2021 the number of IR-5 visas exceeded the number of visas issued for all other Tier Two categories combined. *See* Def.'s Suppl. Br. at 3, ECF 42. Defendant points out that Proclamation 10014 prohibited issuance of IR-5 visas for the period April 22, 2020 through February 24, 2021, but did not prohibit other types of Tier Two visas, for example IR-1 visas (spouse of U.S. citizen) and IR-2 visas (child of U.S. citizen). *See* Proc. 10014, 85 FR 23441. Visa appointments are scheduled two months in advance. *See* Austin Decl. ¶ 3. Thus, while post Mumbai presumably resumed scheduling interviews for IR-5 visa applicants in March 2021, those interviews would not have occurred until May 2021 at the earliest. While no IR-5 visas were issued in May 2021, the following month, June 2021, marked a

sharp increase in IR-5 visas which continued through September 2021. Defendant contends that the low numbers of IR-5 visas issued in January-May 2021 are explained by the impact of Proclamation 10014 and the impact of the COVID-19 pandemic.

In their supplemental response brief, and at the second hearing on Defendant's motion, Plaintiffs argued that Defendant has not adequately explained the dip in IR-5 visas for the months January-May 2021. Plaintiffs assert that discovery is necessary to reveal the true reasons for the post Mumbai statistics and to dispel Plaintiffs' suspicion that IR-5 applicants are treated less favorably than other Tier Two applicants. The Court finds that Defendant's explanation regarding the impact of Proclamation 10014, along with Defendant's statistics showing a drastic increase in IR-5 visas beginning in June 2021, dispel any inference that IR-5 applicants are treated less favorably than other Tier Two applicants. While Plaintiffs insist that they are entitled to more information as to the makeup of Tier Two and how exactly visa applications are processed at post Mumbai, Plaintiffs have not cited any basis for their entitlement to that information. None of the cases addressing delay in processing immigrant visa applications suggest that the type of granular detail Plaintiffs request is necessary or appropriate for a rule of reason inquiry under the first *TRAC* factor. In *Poursohi*, another court in this district rejected the plaintiffs' argument that the source of delay in adjudication of their visa applications was "largely unknown" and denied the plaintiffs' request for discovery. *See Pousohi*, 2021 WL 5331446, at *6.

Accordingly, to the extent Plaintiffs have made an informal motion for a continuance of Defendant's summary judgment motion and leave to take discovery, that motion is DENIED. Moreover, the Court finds that Defendant has shown that the delay in adjudicating Yash and Reva's visa applications comports with the rule of reason. This factor weighs in favor of Defendant's position.

### B.   Second *TRAC* Factor:  Congressional Timetable

"[W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the] rule of reason" analysis. *TRAC*, 750 F.2d at 80. Here, Congress has not required that immigrant visa applications be processed under any particular timeline. *See Poursohi*, 2021 WL

1  5331446, at *7 ("[T]here is no statutorily mandated timeline for DOS to process Plaintiffs' family

2  preference immigrant visa application."); *Dastagir*, 2021 WL 2894645, at *3 ("[T]here is no

3  deadline for the Moscow Embassy to adjudicate Dastagir's visa application.").

4  The complaint contains several allegations suggesting that Congress has imposed timelines

5  for adjudicating immigrant visa applications. Compl. ¶¶ 16, 41, 110, 141. For example, the

6  complaint refers to Section 237 of the Consolidated Appropriations Act, which provides in

7  relevant part that:

> POLICY. – It shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens and nonimmigrant K-1 visa applications of fiances of United States citizens within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service. In the case of an immigrant visa application where the sponsor of such applicant is a relative other than an immediate relative, it should be the policy of the Department of State to process such an application within 60 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service.

Consolidated Appropriations Act, 2000, Pub. L. 106-113, November 29, 1999, 113 Stat 1501.

The complaint also relies on similar language in the State Department's Foreign Affairs Manual ("FAM"). Compl. ¶¶ 16, 41. The FAM "contains directives and guidance for Department of State personnel based on statutes, regulations, Executive Orders, Presidential directives, OMB circulars and other sources." 9 FAM 101.1-1, Jeu Decl. Exh. H, ECF 25-4. Volume 9 of the FAM addresses the adjudication of visa applications, "providing consular officers with the guidance needed to make informed decisions based on U.S. immigration law and regulations." *Id*.

Finally, the complaint refers to 8 U.S.C. § 1571 ("Section 1571"). Compl. ¶¶ 110, 121. Section 1571 contains the following policy statement: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application. . . ." 8 U.S.C. § 1571(b).

Defendant argues that these statutes and manuals set forth policy preferences, but do not require adjudication of immigrant visa applications under any particular timeline. Defendant cites numerous decisions addressing the identical provisions referenced in Plaintiffs' complaint, and determining that those provisions do not create a Congressional timetable for processing immigrant visa applications. *See, e.g., Poursohi*, 2021 WL 5331446, at *7-9 (rejecting plaintiffs'

11

arguments that a Congressional timetable for adjudication of visa applications is imposed by Section 237, the FAM, or Section 1571); *El Centro Reg'l Med. Ctr. v. Blinken*, No. 3:21-cv-00361-DMS-BDD, 2021 WL 3141205, at *4 (S.D. Cal. July 26, 2021) ("[T]he plain text of § 1571 indicates that it applies to the processing of immigrant benefit applications by USCIS, not consular officials at the State Department."); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020) (finding that while Congress articulated a policy preference in Section 237 and the FAM, "the legislature did not translate this policy preference into a specific timeline"); *Patel v. U.S. Dep't of State*, No. 11-CV-6-WMC, 2013 WL 3989196, at *4 (W.D. Wis. Aug. 2, 2013) ("Because internal guidelines and agency manuals like the Foreign Affairs Manual are not subject to APA rulemaking procedures, they lack the force of law and do not bind agency discretion."). Based on these decisions, the Court concludes that this case does not involve a Congressional timetable within the meaning of the second *TRAC* factor.

The cases upon which Plaintiffs rely either do not address the particular statutes and manual referenced in the complaint, or address timelines for proceedings other than immigrant visa applicants. For example, *Islam* involved alleged delay by USCIS in processing an application for adjustment of status. *See Islam*, 2011 WL 2066661, at *7. Moreover, while the *Islam* court appeared to accept the plaintiff's argument that Section 1571 sets a timetable for adjudication of asylum applications, the court ultimately found that the second TRAC factor favored the government, not the plaintiff. *See id*. Accordingly, *Islam* does not advance Plaintiffs' position here.

Because Congress has not provided a timetable for adjudication of immigrant visa applications, the Court finds that the second *TRAC* factor is neutral. *See Jain v. Renaud*, No. 21-CV-03115-VKD, 2021 WL 2458356, at *5 (N.D. Cal. June 16, 2021) (second *TRAC* factor was neutral where Congress did not mandate a timeline); *see also Poursohi*, 2021 WL 5331446, at *9 ("[G]iven the absence of a mandatory timetable for adjudication of Plaintiffs' Application combined with the fact that the delay comports with the rule of reason, the second *TRAC* factor also weighs in Defendant's favor or is at least neutral.").

### C.    Third and Fifth *TRAC* Factors:  Nature of Interests

"The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay." *Poursohi*, 2021 WL 5331446, at *9.  Defendant argues that in light of the public health considerations implicated by the COVID-19 pandemic, these factors favor the Government.  *See El Centro*, 2021 WL 3141205, at *4 ("[T]he policies Defendant asserts to justify the delay also implicate human health and welfare because they were designed to slow the transmission of COVID-19."); *Shen v. Pompeo*, No. CV 20-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (finding that third *TRAC* factor slightly favored government where the COVID-19 pandemic gave rise to significant public health considerations).

Defendant argues that Reva and Yash Garg are relatively well situated in India based on allegations in the complaint that Yash is a self-employed businessman and Reva is a homemaker. Compl. ¶¶ 65-66.  Defendant also discounts the emotional strain caused by prolonged family separation, asserting that Plaintiff Kapoor is highly educated and able to pursue her chosen profession despite the upheaval caused by the delay in processing her parents' visa applications.

Defendant's arguments are unpersuasive.  District courts within the Ninth Circuit have recognized the emotional harm caused by family separation, particularly in the midst of the COVID-19 pandemic.  *See, e.g., Poursohi*, 2021 WL 5331446, at *9.  In *Poursohi*, the district court found that although the State Department's actions were designed to slow the transmission of COVID-19, the nature of the plaintiffs' interests tilted the third and fifth factors in their favor. *See id.*  In the present case, Plaintiff Kapoor's declaration describes in detail the physical and emotional hardship caused by the prolonged separation from her parents.  *See* Kapoor Decl. ¶¶ 10-24, ECF 27-1.  The emotional strain of the separation has been exacerbated by Yash's diagnosis of Acute Viral Encephalitis, a life threatening disease for which he required hospitalization and surgery.  *See id.*

This Court, like the *Poursohi* court, finds that the third and fifth factors weigh in Plaintiffs' favor.

### D. Fourth *TRAC* Factor: Effect of Expediting Delayed Action

"The fourth *TRAC* factor requires the Court to consider the effect of expediting adjudication of plaintiffs' applications on agency action of a higher or competing priority." *Jain*, 2021 WL 2458356, at *6 (quotation marks and citation omitted). "Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain." *Id.* (collecting cases). Defendant argues that this is precisely the effect that the requested relief would have in this case.

Plaintiffs seek "an order compelling the Defendant and those acting under him to perform their duty to complete all steps necessary to adjudicate Plaintiffs' immigrant visa applications, including any pending background checks and the interview, within twenty-one (21) days of the order." Compl. Prayer ¶¶ B-C. The effect of such an order would be to move Reva and Yash to the head of the queue for interviews, ahead of any Tier One applicants awaiting interview, and ahead of any Tier Two applicants whose applications were documentarily complete before Reva and Yash's applications. "Plaintiffs make no showing that would justify moving them to the head of the queue, or why their petitions should be processed immediately while other similarly-situated petitioners wait their turn." *Jain*, 2021 WL 2458356, at *6.

Plaintiffs cite *Liang* for the proposition that "Defendants' failure to fulfill their statutory duty to other applicants has no bearing on whether they have fulfilled their statutory duty to Plaintiffs, and thus cannot serve as a basis for denying Plaintiffs' motion." *Liang*, 2007 WL 3225441, at *7. The *Liang* court's statement was made in the context of its determination that the FBI's failure to complete a plaintiff's background check for two and a half years was unreasonable as a matter of law. *See id.* Here, Defendant has shown that thousands of immigrant visa applicants are waiting for interviews to be scheduled at post Mumbai, and that this backlog is the result of factors outside Defendant's control, such as the COVID-19 pandemic and Proclamation 10014. Under these circumstances, this Court will follow *Jain* rather than *Liang*.

Defendant has demonstrated that the fourth *TRAC* factor weighs in his favor, because expediting the Yash and Reva's applications "would result in no net gain in the appointment

14

backlog while disadvantaging visa applicants of higher priority or of the same priority but whose applications have been pending longer." *Poursohi*, 2021 WL 5331446, at *11.

### E. Sixth *TRAC* Factor: Impropriety

The sixth *TRAC* factor requires the Court to consider any allegations of impropriety. Plaintiffs have not made any such allegations in this case. "Under similar circumstances, courts in the Ninth Circuit have found this factor to either weigh in the government's favor or to be neutral." *Poursohi*, 2021 WL 5331446, at *11.

Accordingly, this Court finds the sixth *TRAC* factor to be neutral.

### F. Weighing the *TRAC* Factors

As discussed above, the first and fourth *TRAC* factors weigh against granting Plaintiffs' request for relief under the APA and Mandamus Act. "[C]ourts routinely afford the most weight" to the first and fourth factors. *Poursohi*, 2021 WL 5331446, at *11. Consequently, these factors outweigh the third and fifth factors, which favor Plaintiffs. The second and sixth factors are neutral.

The Court finds that Defendant has established that he is entitled to summary judgment based on application of the *TRAC* factors to the undisputed facts in the record. Plaintiffs have not demonstrated the existence of any disputed material facts that would preclude summary judgment.

## IV. ORDER

(1) Defendant's motion for summary judgment is GRANTED.

(2) This order terminates ECF 25.

(3) The Court will issue judgment for Defendant simultaneously with this order.

Dated: January 20, 2022

BETH LABSON FREEMAN
United States District Judge

15